AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
WESTERN District of TEXAS

FILED
MAR 19 2018
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. SA:18-mJ-0334 |
| RONNIE RAY RILES | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **March 16, 2018** in the county of **Bexar** in the **Western** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18/1791(a)(1) & (b)(1) | Providing Contraband in Prison. |
| | PENALTIES: Max 20 years imprisonment, $250,000 fine, Up to 3 years supervised release, $100 mandatory special assessment. |

This criminal complaint is based on these facts:

See attached affidavit

☒ Continued on the attached sheet.

_____
Complainant's signature

FBI S/A Martha Yanez
Printed name and title

☒ Sworn to before me and signed in my presence.
☐ Sworn to telephonically and signed electronically.

Date: 3/16/2018

_____
Judge's signature

City and state: San Antonio, Texas

ELIZABETH S. CHESTNEY, U.S. Magistrate Judge
Printed name and title

## United States District Court

## Western District of Texas

## San Antonio Division

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Martha L. Yanez, being duly sworn do hereby depose and state:

1. Your affiant is currently employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and has been so employed since 2012. Since then, your affiant has led and/or participated in multiple criminal and National Security investigations, including several public corruption investigations. Your affiant has received training in investigating public corruption and has become familiar with the manner in which criminal activities are conducted by public officials, including persons employed at correctional and detention facilities.

2. On November 2, 2017, FBI Agents, San Antonio Division and the United States Marshal Service, initiated an investigation after receiving information from a Cooperating Source (CS1). CS1 said RONNIE RAY RILES III, a laundromat officer working at the Central Texas Detention Facility – GEO (hereafter GEO), was known to smuggle drugs and/or other contraband into GEO in exchange for money. CS1 stated RILES brought in contraband for him, to include a cell phone and cigarettes, while he was at the GEO facility. RILES would bring contraband for other inmates housed at GEO on a normal basis, to include cell phones, drugs, cigarettes, and alcohol. CS1 said she/he distinctly recalled on the day that an inmate was stabbed on August 4, 2017, RILES passed out alcohol in cleaning bottles for $100 each.

3. GEO is a federal pre-trial detention facility in San Antonio, Texas, in the Western District of Texas.

4. Subsequent to CS1's interview, FBI Agents verified the identification of RONNIE RAY RILES III. RILES is a direct employee of GEO Corrections, is employed as a Laundry Officer, and has been since he began working at GEO since February of 2016.

5. An interview was conducted with a cooperating source from GEO, CS2, on 12/19/2017. CS2 heard there was an African American male who works in the laundry unit at GEO who smuggles contraband. The male is physically described as 5'5" or 5'6" tall, clean cut, thin build, short afro hair with dark complexion. CS2 stated this guy is "in charge" of the laundry unit. He stated this person allowed inmates to access their Facebook accounts using his personal cellular telephone. (Agents note: the description matches RILES.)

6. Another interview was conducted with a cooperating source, CS3. CS3 described a black GEO employee, short in statute, approximately 27 or 28 years of age, who wore two small gold chains, who worked in the laundry facility, as the person who smuggled in cell phones for an

inmate at GEO. CS3 was shown a known picture of RONNIE RAY RILES III and positively identified him as the person he was referring to who worked at the GEO laundry facility and smuggled in cell phones for inmates. CS3 had seen RILES deliver cell phones to another inmate when RILES distributed laundry to the pods. RILES concealed the cell phones in the laundry. The inmate used the cell phone to communicate with RILES whenever he needed other cell phones or contraband. RILES had phones already pre-bought to smuggle in. If the inmate requested a typical type of cell phone RILES did not have, RILES would purchase it. RILES then contacted someone in the outside world (typically a family member of the person requesting contraband) to meet in order to exchange payment. RILES then smuggled in the cell phones and delivered it to the inmate when delivering laundry items. To CS3's knowledge, RILES had smuggled in seven cell phones. In addition to smuggling in cell phones, RILES smuggled in Suboxone. Suboxone is a thin film prescribed by doctors to help heroin addicts. Suboxone was easy to smuggle in because it can be disguised in paper. RILES charged $100 per film.

7.      As part of an undercover operation, a cooperating inmate in GEO asked RILES to smuggle in ICE methamphetamine in return for $1,500. The cooperating inmate gave RILES an undercover cell phone number to call in order to coordinate the pick up of ICE and the money. On March 15, 2018, RILES sent a text to the undercover phone number using the agreed upon code language. A cooperating source, CS4, returned the phone call to RILES and they coordinated a meeting. RILES acknowledged he was going to receive half an ounce of methamphetamine and $1,500. CS4 and RILES set up a meeting for March 16, 2018. They decided to meet at a parking lot near the intersection of S Flores St and W Nueva Street in San Antonio, Texas, at noon. The meeting was under physical and electronic surveillance by FBI Agents, United States Marshal Services Deputies and other law enforcement partners. Your affiant electronically monitored the meeting. At approximately 12:53 pm, your affiant observed a vehicle Chevrolet light blue/gray Malibu enter the parking lot. RILES told CS4 he would be driving a light blue Malibu. RILES parked the Malibu and walked over to CS4's vehicle and entered it. CS4 advised RILES she had half an ounce of ICE and $1,500 for him. CS4 handed RILES both. RILES took the ICE (sham ICE) and counted the $1,500. When RILES exited the vehicle, FBI agents and partner law enforcements officers arrested RILES.

8.      Before FBI agents relocated RILES' vehicle, RILES stated he had firearm in his vehicle and advised agents of its exact location. Agents located a Jimenez Arms Incorporated 9 mm semi-automatic firearm and a magazine with seven bullets in the center dashboard console of RILES' vehicle.

9.      RILES was interviewed at the FBI office, after being advised of the Miranda Rights and voluntarily agreeing to answer questions. During the interview, RILES confessed to attempting to smuggle ICE into GEO in exchange for $1,500. RILES confessed to smuggling contraband into GEO in at least three other times in exchange for money.

10.     Your affiant believes probably cause exists for the arrest of RONNIE RAY RILES III for attempting to provide contraband into GEO in violation of 18 U.S.C. 1791 (a)(1) and (b)(1).

_____
Special Agent Martha L. Yanez
Federal Bureau of Investigation

Subscribed and sworn to before me this __16th__ day of March, 2018.

_____
HONORABLE JUDGE ELIZABETH CHESTNEY
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF TEXAS